UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| FELIX TORRES, | ) | |
| Petitioner, | ) | |
| v. | ) | Civil No. 15-13598-LTS |
| GARY RODEN, | ) | |
| Respondent. | ) | |

MEMORANDUM AND ORDER ON PETITION
FOR WRIT OF HABEAS CORPUS (DOC. NO. 1)

November 13, 2017

SOROKIN, J.

Felix Torres, a prisoner at the Massachusetts Correctional Institution in Norfolk, Massachusetts, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts two claims: one related to the alleged closure of the courtroom during jury selection at his trial, and one challenging the admission of "first complaint" evidence under Massachusetts evidentiary rules during his trial. The respondent has opposed the petition, arguing Torres's claims are meritless and non-cognizable, respectively. For the reasons that follow, Torres's petition is DENIED.

I. BACKGROUND

In August 2008, a Worcester County Superior Court jury convicted Torres of multiple counts of rape and indecent assault and battery of a child. Commonwealth v. Torres, 15 N.E.3d

778, 781 (Mass. App. Ct. 2014); Doc. No. 1 at 2-3;[1] S.A. at 7-8.[2] He was sentenced to a term of nine-to-twelve years' incarceration, followed by a term of probation. Doc. No. 1 at 2; S.A. at 8. The charges stemmed from Torres's alleged sexual assaults of his daughter, Kim, and two of Kim's maternal aunts, Nina and Ann.[3] Torres, 15 N.E.3d at 781. The victims first disclosed the assaults after learning that Kim's stepsister had been sexually abused by Kim's maternal grandfather. Id. at 781-82. The disclosures occurred during a family meeting held to discuss the allegations against Kim's grandfather; the meeting included all three victims, Kim's mother, Kim's grandmother, and another of Kim's maternal aunts. Id. After the meeting, the family reported the allegations against Torres and Kim's grandfather to the police.[4] Id.

At trial, the Commonwealth called all three victims to testify. Id. at 781. It also presented testimony from one "first-complaint witness" for each victim. Id. at 783. Ann testified about her own abuse, and as the first-complaint witness for Kim; Nina's sister testified as the first-complaint witness for Nina; and Kim's mother testified as the first-complaint witness for Ann. See Doc. No. 28 at 40-42 (summarizing the relevant testimony with citations to the trial transcript). Each victim and first-complaint witness testified, at least to some extent, about the family meeting and the revelations of abuse made during the course thereof. Id. The trial court gave a limiting instruction during the testimony of each of the three first-complaint witnesses. Torres, 15 N.E.3d at 783. The first-complaint doctrine will be described in more detail below.

---

[1] Citations to documents on the Court's electronic docket reference the assigned docket number and the page number appearing in the ECF header at the top of each page.
[2] The respondent has filed a Supplemental Answer (cited as "S.A.") containing the state-court record in one bound volume. Doc. No. 30. Complete trial transcripts were filed in a separate bound volume. Doc. No. 48.
[3] The state appellate court referred to the victims using pseudonyms, which this Court adopts for purposes of this Memorandum.
[4] The cases against Torres and Kim's grandfather were prosecuted separately.

2

Torres filed a timely notice of appeal to the Massachusetts Appeals Court ("MAC"), then, with the assistance of new counsel, moved for a new trial in January 2011 based on an alleged violation of his right to a public trial. S.A. at 8-9; Torres, 15 N.E.3d at 782. After a two-day evidentiary hearing featuring testimony by Torres, two of his family members, his trial counsel, and two court officers, the trial court denied Torres's motion. Torres, 15 N.E.3d at 782; Doc. No. 1-1 at 8-15. The MAC affirmed in a published decision on September 10, 2014, rejecting Torres's public-trial claim, his attack on the admission of first-complaint evidence, and two other claims raised in his consolidated appeal which are not relevant here. See generally Torres, 15 N.E.3d at 782-86.

The Supreme Judicial Court declined Torres's application for further review on November 26, 2014. S.A. at 447. Torres did not seek certiorari in the United States Supreme Court. He filed a timely federal habeas petition in this Court on October 19, 2015, raising the following claims:

1)  Torres's constitutional right to a public trial was violated during jury selection when the public, including members of his family, were excluded from the courtroom, and the trial court's finding that the courtroom was open was an unreasonable determination of the facts; and

2)  The trial court applied the Massachusetts "first complaint" doctrine in an arbitrary and capricious manner, violating Torres's due process rights.

Doc. No. 1 at 6, 8.[5] Torres's claims have been fully briefed and are ripe for disposition.

## II. LEGAL STANDARDS

Federal district courts may not grant a writ of habeas corpus unless they find that the state court's adjudication of the petitioner's claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[5] The petition included a third claim, which Torres voluntarily deleted in response to a motion to dismiss for failure to exhaust the claim. Doc. No. 26 at 1.

Supreme Court of the United States[,] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In other words, state court decisions merit substantial deference. As the Supreme Court repeatedly has emphasized, such deference results in a federal habeas corpus standard that is "difficult to meet," with the petitioner carrying a heavy burden of proof. Harrington v. Richter, 562 U.S. 86, 102 (2011); accord Cullen v. Pinholster, 563 U.S. 170, 181 (2011); see Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013) (emphasizing the "formidable barrier" faced by federal habeas petitioner where claims already were adjudicated in state court, and limiting relief to cases of "extreme malfunctions" by state criminal justice systems).

If a state court's decision "was reasonable, it cannot be disturbed" on habeas review. Hardy v. Cross, 565 U.S. 65, 72 (2011) (per curiam); see Renico v. Lett, 559 U.S. 766, 779 (2010) (admonishing federal habeas courts not to "second-guess the reasonable decisions of state courts"). When applying this strict standard, federal courts must presume that the state court's factual findings are correct, unless the petitioner has rebutted that presumption with clear and convincing evidence. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340-41 (2003); accord Teti v. Bender, 507 F.3d 50, 57 (1st Cir. 2007); see Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (per curiam) (noting "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong"); Pike v. Guarino, 492 F.3d 61, 68 (1st Cir. 2007) (discussing the "separate and exacting standard applicable to review of a state court's factual findings").

A state court ruling is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision

4

of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). The state court is not required to cite, or even have an awareness of, governing Supreme Court precedents, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); cf. Richter, 562 U.S. at 100 (stating "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" and entitled to deference).

For a habeas petitioner to prevail under this exacting standard, the state court judgment must contradict clearly established holdings of the Supreme Court, not merely law articulated by a lower federal court, and not dicta of any court. Williams, 529 U.S. at 404-05; accord Donald, 135 S. Ct. at 1376; Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). The Supreme Court has "repeatedly emphasized" that "circuit precedent does not constitute 'clearly established Federal law'" for purposes of § 2254(d)(1). Glebe v. Frost, 135 S. Ct. 429, 431 (2014); see also, e.g., Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (warning against using circuit precedent to "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced").

A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule, but "unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407-08. When making the "unreasonable application" inquiry, federal habeas courts must determine "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. An unreasonable application of the correct rule can include the unreasonable extension of that rule to a new context where it should not apply, as well as an unreasonable failure to extend the rule to a new context where it should apply. Id. at 407. It cannot, however, include a decision

5

by a state court not "to apply a specific legal rule that has not been squarely established by [the Supreme Court]." Mirzayance, 556 U.S. at 122. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

A showing of clear error is not sufficient for a habeas petitioner to establish entitlement to relief. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); accord McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc). Rather, relief is available only where a state court's "determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Brown v. Ruane, 630 F.3d 62, 67 (1st Cir. 2011); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam) (emphasizing that a habeas court "may not overturn a state court decision . . . simply because the federal court disagrees with [it]"); Richter, 562 U.S. at 103 (requiring a petitioner to "show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"). Put another way, relief under § 2254 is warranted only if a petitioner shows that the state court's rejection of his claim was "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible options." Sanna v. Dipaolo, 265 F.3d 1, 13 (1st Cir. 2001) (quotation marks omitted).

Neither of Torres's claims entitles him to relief under these stringent standards.

III. DISCUSSION

    A. Public Trial

In his first claim, Torres alleges that the courtroom was closed to the public when his jury was selected, pursuant to a common practice at the time in Worcester County Superior Court and

6

in violation of his Sixth Amendment rights. Doc. No. 1 at 6; Doc. No. 28 at 13-18. He argues that the state courts' findings of no closure were based on an unreasonable determination of the facts in light of the evidence presented at the evidentiary hearing on his motion for a new trial, that closure amounted to a structural error, and that the MAC's resulting denial of his first claim was inconsistent with Supreme Court decisions construing the Sixth Amendment's public-trial guarantee. Doc. No. 28 at 12-34.

The trial court held a post-trial evidentiary hearing to explore Torres's public-trial claim and, after hearing testimony of six witnesses and reviewing jury pool data on file with the court, determined as a matter of fact that the courtroom had not been closed during the selection of Torres's jury.[6] Doc. No. 1-1 at 8, 13-14. In rejecting Torres's public-trial claim on appeal, the MAC described the trial court's handling of the issue this way:

> After hearing the evidence, the judge issued a thoughtful decision in which he concluded that, notwithstanding the "culture" in Worcester County to "typically" clear the court room for empanelment, there was also a practice of permitting admittance during empanelment when seats were available. By comparing the seating capacity of the court room with the number of jurors called during the empanelment process, the judge concluded that the court room was not closed to the public in this case. We also note that the judge discredited the defendant's two family members who claimed that they were excluded.

15 N.E.3d at 782.[7] The MAC then exercised its "own judgment on the ultimate factual as well as legal conclusions," id. (quotation marks omitted), and determined that the trial court's finding

---

[6] Torres first raised his public-trial claim in state court in his January 2011 motion for a new trial. S.A. at 9, 23-24. The evidentiary hearing occurred in June 2011, S.A. at 4, 118, nearly three years after Torres's trial.

[7] The trial court found that, in this case, "there would have been some room for spectators and that more seats would have opened up as the process progressed and jurors were excused," and credited testimony by court officers "that if there were available seats the public could be allowed into the courtroom during the empanelment." Doc. No. 1-1 at 13. There was no evidence that the judge had ordered the courtroom closed or that i had been locked. Id. at 14. Torres's sister and his brother's girlfriend testified that members of Torres's family had been repeatedly prevented from entering the courtroom during jury selection and during a pretrial motion hearing. Id. at 8, 10-11. The trial court found that specific assertions about when they

7

"that the court room was not closed to the public, is amply supported by the evidence and reflects a diligent analysis of the circumstances that lay at the heart of the defendant's claims." Id.

The MAC's endorsement of the trial court's finding as to closure was not based on an unreasonable determination of the facts in light of the evidence presented at the evidentiary hearing on Torres's motion for a new trial. Torres correctly notes – and the MAC acknowledged – that the evidence before the trial court reflected a general practice or custom in Worcester County of closing courtrooms to the public, at least for portions of jury selection. This, however, does not establish that Torres's courtroom was closed during the selection of his jury. Indeed, neither court officer who testified recalled Torres's case specifically. S.A. at 120, 123, 142. Portions of their testimony – those asserting that the maximum number of jurors that could fit in a given courtroom were brought in for voir dire in serious cases and, in particular, in sexual assault cases, and that this meant there was no room in such courtrooms for family members during jury selection, S.A. at 120, 125-27, 142, 145-46 – could not have pertained to Torres's case, given the trial court's records of the number of jurors actually called and the seating capacity of the relevant courtroom. In light of those facts, which Torres has not challenged, and considering the testimony of both court officers that they would have admitted members of the public during jury selection if there were available seats in the courtroom, S.A. at 120, 123, 145,[8]

---

were present and prevented from entering were inconsistent with the times when court had been in session. Id. at 10-11, 13-14. As a result, the trial court believed that they were "willing to say what they believe needs to be said in order to obtain a new trial for Mr. Torres." Id. at 13.

[8] One court officer testified that he would have admitted a defendant's family members had they asked to enter during jury selection, assuming there were open seats, and that he would have brought such requests to the trial judge if the same family members had asked more than once to be admitted. S.A. at 123, 128. The other court officer testified that repeated requests by family members seeking to enter the courtroom during jury selection were rare and would stand out in his memory; he did not recall such requests in Torres's case. S.A. at 149-50. Neither Torres nor his trial counsel could provide first-hand testimony as to whether Torres's family members were prevented from entering during part or all of jury selection. See S.A. at 133-34 (reflecting trial

8

the MAC's conclusion that Torres had not established closure is supported by evidence in the record and, "even if it is debatable, . . . is not unreasonable." Wood v. Allen, 558 U.S. 290, 301 (2010); see Torres v. Dennehy, 615 F.3d 1, 5 (1st Cir. 2010) ("While Torres presents an arguable interpretation of the facts, the SJC found otherwise and provided adequate support for its position. . . . Torres'[s] counter-arguments do not show that the state courts' determination of the facts was unreasonable.").

Because the standards governing habeas review do not allow leeway for second-guessing the MAC's reasonable determination that Torres's courtroom was not closed to the public, this Court need not address the ancillary arguments Torres presents in support of his first claim. Those questions – whether the state courts improperly disregarded Torres's claim that trial counsel was ineffective in failing to object to the alleged closure of the courtroom, Doc. No. 28 at 18-21, whether the state courts disregarded or unreasonably applied Supreme Court decisions discussing the extent to which the public constitutionally may be excluded from pretrial proceedings including jury selection, id. at 21-28,[9] and whether the state courts inappropriately excused a structural error based on a "culture of closure" that yielded systemic ignorance of the law, id. at 28-34 – require resolution only if closure is found (or, more accurately here, if the

---

counsel's concession that he did not know whether Torres's family members were outside "trying to get inside again" during jury selection).

[9] To the extent Torres faults the MAC for not adequately discussing federal constitutional law or "go[ing] beyond the bare bones of the rights articulated by the Supreme Court," Doc. No. 28 at 25, his challenge ignores the fact that federal habeas courts may not grant relief based on such reasoning. See Packer, 537 U.S. at 8 (emphasizing that a state-court decision is reasonable even absent citation to or "awareness of" pertinent Supreme Court decisions, "so long as neither the reasoning nor the result of the state-court decision contradicts them"); cf. Richter, 562 U.S. at 100 (requiring deference to state court decisions even where no reasoning at all is provided to support a resolution of the merits of a federal claim).

finding of non-closure is deemed unreasonable) in the first instance. Another case might squarely raise such questions; this case does not.[10]

Accordingly, Torres's public-trial claim does not merit habeas relief.

B.     First-Complaint Evidence

Torres also challenges the admission of first-complaint evidence during his trial, arguing it was used "in such an arbitrary and capricious manner that due process was violated and [he] did not receive a fair trial." Doc. No. 1 at 8. He characterizes the first-complaint testimony at issue as "unreliable and highly prejudicial," Doc. No. 28 at 39, "overlapping and repetitive," id. at 42, "prejudicial witness bolstering," id. at 43, and "incompetent or otherwise inadmissible hearsay," id. at 44. In addition, he complains that defense counsel's cross-examination of the victims "should not have given the Commonwealth cart[e] blanche to tread all over" his constitutional rights, id. at 42-43, and he suggests "there is no way the jury could have parsed what testimony was to be considered for its truth with what testimony was admitted solely for corroboration," id. at 45-46.

The Massachusetts first-complaint rule permits testimony "by the recipient of a complainant's first complaint of an alleged sexual assault regarding the fact of the first complaint and the circumstances surrounding the making of that first complaint, including details of the complaint," but allows jurors to consider such evidence only for "the limited purpose of . . . determining whether to credit the complainant's testimony about the alleged sexual

---

[10] Even if closure were established here, it is not clear that Torres's public-trial claim would warrant relief. See Weaver v. Massachusetts, 137 S. Ct. 1899, 1910-12 (2017) (concluding that "the public-trial right is important for fundamental reasons, [but] in some cases an unlawful closure might take place and yet the trial still will be fundamentally fair from the defendant's standpoint," and requiring a showing of prejudice flowing from the "structural error" of a public-trial violation where the claim is not preserved at trial, but is first raised on collateral review).

10

assault, not to prove the truth of the allegations." Mass. Guide Evid. § 413(a). In analyzing the application of this rule during Torres's trial, the MAC recounted the relevant events as follows:

> The Commonwealth called a first complaint witness for each victim, and the judge gave a first complaint curative instruction for each witness. In defense counsel's opening and in his cross-examination of the victims, he alluded to and introduced information that exceeded the scope of the first complaint doctrine in an effort to establish that the victims had colluded, or been manipulated, to accuse the defendant. For example, when cross-examining Kim, defense counsel asked whether her aunts told her that the defendant had abused them and whether Kim told a police officer that something came out of the defendant's penis during one of the assaults. In response, the Commonwealth presented evidence that exceeded the bounds of the first complaint doctrine. Defense counsel did not object, except in one instance.

Torres, 15 N.E.3d at 783-84. The MAC then rejected Torres's first-complaint claim on its merits, concluding that "the judge [had] followed first complaint protocol and [had] g[iven] the required limiting instruction," that Torres's counsel had "first brought out statements that exceeded permissible first complaint testimony" in an effort to demonstrate fabrication by the victims, and that this "reasonable trial tactic" opened the door for the Commonwealth "to explore the contents and the context of the statements in more detail" to rebut the attacks on the victims' credibility. Id. at 784.

The MAC's approval of the manner in which first-complaint evidence was used in Torres's trial was not contrary to, nor an unreasonable application of, the Due Process Clause or any Supreme Court decisions construing it. "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983). Rather, "to trigger [federal habeas] relief," where a state court has issued a ruling construing or applying a state evidentiary rule such as the first-complaint doctrine, "the state court's application of state law must be 'so arbitrary or capricious as to constitute an independent due process . . . violation.'" Coningford v. Rhode Island, 640 F.3d 478, 484 (1st Cir. 2011) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).

11

Here, Torres has summarily asserted – but the record does not establish – that the admission of first-complaint evidence "so infected [his] trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); see Dowling v. United States, 493 U.S. 342, 352 (1990) (defining "the category of infractions [arising from application of state rules of evidence] that violate fundamental fairness very narrowly," and finding no such violation where claim involved prior-bad-acts evidence). Torres has cited no clearly established federal law or Supreme Court decision that prohibits – or even addresses directly – the sort of first-complaint testimony offered during his trial.[11] "The absence of an on-point pronouncement from the Supreme Court leaves hanging by the slimmest of threads [Torres's] claim that the state court's admission of the [first-complaint] evidence can be deemed an unreasonable application of the broader fair-trial principle." Coningford, 640 F.3d at 485; see Rodriguez v. Roden, No. 13-cv-11807, 2014 WL 2740375, at *8 (D. Mass. June 14, 2014) (noting "the Supreme Court has not pronounced a rule specific to a state court's admission of . . . testimony analogous to a first complaint").

---

[11] The Supreme Court decisions Torres does cite are distinguishable legally and factually from this case, are relevant only insofar as they announce very general due process principles, and require no particular result here. See Perry v. New Hampshire, 565 U.S. 228, 232 (2012) (regarding testimony about out-of-court identification of defendant without preliminary reliability finding by state trial court and noting safeguards such as "right to counsel, compulsory process to obtain defense witnesses, and the opportunity to cross-examine witnesses" generally are sufficient to ensure due process while permitting state law to govern evidentiary matters and juries to assess reliability of testimony); Montana v. Egelhoff, 518 U.S. 37, 43-44 (1996) (regarding state rule barring voluntary intoxication evidence as defense to deliberate homicide); Manson v. Brathwaite, 432 U.S. 98 (1977) (regarding out-of-court identifications made after suggestive confrontations); United States v. Lovasco, 431 U.S. 783 (1977) (regarding pre-indictment investigative delay); Bruton v. United States, 391 U.S. 123 (1968) (regarding admission during joint trial of one defendant's confession implicating another defendant).

Having reviewed the record of Torres's trial and considered the MAC's disposition of the first-complaint claim, this Court reaches the same conclusion the First Circuit did when confronting a similar federal claim arising from the admission of prior-bad-acts evidence:

> Because the Supreme Court has not laid down a governing rule anent the admission of [the challenged category of] evidence, the broader fair-trial principle is the beacon by which we must steer. We need not linger long over this point; it is nose-on-the-face plain that the state court's approval of the introduction of the [challenged] evidence in this case, whether or not an unarguably correct evidentiary ruling, was well within the universe of plausible evidentiary rulings. It was, therefore, not so arbitrary or capricious as to work a denial of the petitioner's constitutionally secured fair-trial right.

Coningford, 640 F.3d at 485. Because Torres has not established an "extreme malfunction" of the justice system, Titlow, 134 S. Ct. at 16, his second claim fails.[12]

IV. CONCLUSION

Because his claims are meritless, Torres's habeas petition is DENIED.[13]

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

---

[12] To the extent Torres complains that the trial court allowed testimony beyond the bounds of the first-complaint rule, such a claim is not cognizable on federal habeas review. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (emphasizing that "federal habeas relief is [not] available for an error of state law"). To the extent he challenges the Massachusetts first-complaint rule as a general matter, see Doc. No. 28 at 35 (suggesting such testimony is not permitted against most defendants), the Massachusetts state-court decisions upholding and construing the rule, see id. at 35 & n.15 (arguing such decisions were based "on flawed and outdated research"), or the trial court's limiting instructions regarding the first-complaint evidence here, see id. at 42 (calling the instructions "inconsistent and likely confusing to the jury"), those issues are not properly before this Court because Torres failed to include them among the legal and factual bases for this claim in state court. S.A. at 60-65, 382-85, 405-08, 419-22; see Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997) (requiring a habeas petitioner to "fairly and recognizably present[] to the state courts the factual and legal bases of [a] federal claim").

[13] As "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000), no certificate of appealability shall issue. The MAC's evaluation of Torres's public-trial claim was based on a reasonable interpretation of the relevant evidence and was consistent with federal law. To the extent his second claim asserts a cognizable federal challenge, there is no legal or factual support for finding the admission of first-complaint evidence undermined the reliability of Torres's trial.

13